# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

**Case No.:** 26-cv-21683

ND PRODUCTS INC.,

     Plaintiff,

  v.

THE INDIVIDUALS, CORPORATIONS, LIMITED
LIABILITY COMPANIES, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS IDENTIFIED
ON SCHEDULE A,

     Defendants.

_____/

## COMPLAINT

Plaintiff, ND PRODUCTS INC. ("Plaintiff" or "ND PRODUCTS"), by and through undersigned counsel, hereby alleges as follows against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on Schedule A[1] (collectively, "Defendants"):

## INTRODUCTION

1.    This is a civil action for trademark and design patent infringement to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use unauthorized and unlicensed products that infringe Plaintiff's registered trademarks and granted design patents.

---

[1] Plaintiff submits herein a redacted version of the Schedule A and intends to promptly file a motion to file the unredacted Schedule A under seal once the Court's filing system permits the Plaintiff to do so after the Clerks Notice of Judge Assignment is entered.

2.      Specifically, Defendants have infringed Plaintiff's trademarks covered by U.S. Trademark Registration Nos. 4,455,913 and 7,151,155 (the "ND Products Trademarks" or "Plaintiff's Trademarks").  Defendants have also infringed Plaintiff's design patents covered by U.S. Patent Nos. US D1,039,148 S, US D965,784 S, and US D866,763 S (the "ND Products Patents" or "Plaintiff's Patents") (together with Plaintiff's Trademarks, the "ND Products IP" or "Plaintiff's IP").

3.      Plaintiff's IP is valid, subsisting, and in full force and effect.  Plaintiff is the owner and/or lawful assignee of all rights, title, and interest in and to Plaintiff's IP.  True and correct copies of the federal trademark registrations for Plaintiff's Trademarks are attached as **Exhibit 1**. True and correct copies of Plaintiff's Patents, which were duly and legally issued by the U.S. Patent and Trademark Office, are attached as **Exhibit 2**.

4.      Each Defendant directly and/or indirectly imports, develops, designs, manufactures, distributes, markets, offers to sell, and/or sells products that infringe directly and/or indirectly upon at least one of Plaintiff's Trademarks and/or at least one of Plaintiff's Patents (the "Counterfeit Products") in the United States, including in this Judicial District and Division, and otherwise purposefully directs infringing activities to this District and Division in connection with the Counterfeit Products.  By selling the Counterfeit Products that purport to be genuine and authorized products using Plaintiff's IP, Defendants cause confusion and deception in the marketplace.

5.      Defendants conduct this deceptive activity through their numerous fully interactive commercial internet e-commerce stores operating under the online marketplace accounts identified in the Schedule A (collectively, the "Defendant Internet Stores"), including but not limited to the platforms Amazon.com ("Amazon"), DHgate.com ("DHgate"), eBay.com ("eBay"), Shein.com

("Shein"), and Walmart.com ("Walmart") (collectively, the "Marketplace Platforms").

6.    Defendants design their online marketplace accounts to appear to be selling Plaintiff's genuine products improperly bearing and/or using the Plaintiff's Trademarks and/or Patents, while selling inferior imitations of such products.

7.    The Defendant Internet Stores share unique identifiers, such as design elements and similarities to the Counterfeit Products offered for sale, establishing a logical relationship between them and demonstrating that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

8.    Defendants attempt to avoid liability by operating under one or more seller aliases to conceal their identities and to obscure the full scope and interworking of their illegal counterfeiting operation.  Plaintiff is forced to file this action to combat Defendants' infringement of Plaintiff's IP, as well as to protect unknowing consumers from purchasing Counterfeit Products over the internet.

9.    As a result of Defendants' actions, Plaintiff has suffered and continues to suffer irreparable harm, including consumer confusion, dilution, and tarnishment of their valuable trademarks and goodwill.  Plaintiff is further irreparably damaged from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and/or importing products that embodies its granted patents.  Plaintiff therefore seeks injunctive and monetary relief.

## SUBJECT MATTER JURISDICTION

10.    This Court has original subject matter jurisdiction over the trademark infringement claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and 28 U.S.C. §§ 1331, 1338(a)–(b).

11.    This Court has original subject matter jurisdiction over the patent infringement

claims arising under the patent laws of the United States pursuant to 35 U.S.C. § 1 *et seq.*, and 28 U.S.C. §§ 1331, 1338(a).

### PERSONAL JURISDICTION AND VENUE

12.     Personal jurisdiction exists over Defendants in this Judicial District pursuant to Florida Statutes §§ 48.193(1)(a)(1)–(2), (6); or, in the alternative, Federal Rule of Civil Procedure 4(k) because, upon information and belief, each Defendant regularly conducts, transacts, and/or solicits business in Florida and in this Judicial District, and/or derives substantial revenue from business transactions in Florida and in this Judicial District, and/or otherwise avails itself of the privileges and protections of the laws of the State of Florida such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice.

13.     In addition, each Defendant has offered to sell and ship, and/or has sold and shipped, Counterfeit Products into this Judicial District.  Defendants' infringing actions caused injury to Plaintiff in Florida and in this Judicial District, such that Defendants should reasonably expect such actions to have consequences in Florida and this Judicial District.  For example:

a.     Defendant Internet Stores accept orders for Counterfeit Products from, and offer shipping to, Florida addresses located in this Judicial District.

b.     Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including those in Florida and in this Judicial District, through accounts (the "User Accounts") with online marketplace platforms such as Amazon, DHgate, eBay, Shein, and Walmart, as well as any and all as-yet-undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, through which consumers in the United

States, including Florida (and more particularly, in this Judicial District), can view the one or more Defendant Internet Stores, communicate with Defendants regarding their listings for Counterfeit Products, and place orders for, receive invoices for, and purchase Counterfeit Products for delivery in the United States, including Florida (and specifically, in this Judicial District), as a means for establishing regular business with the United States, including Florida (and specifically, in this Judicial District).

      c.     Upon information and belief, Defendants have transacted business with consumers located in the United States, including Florida (and more particularly, in this Judicial District), for the sale and shipment of Counterfeit Products.

14.     Venue is proper in this Court pursuant to at least 28 U.S.C. §§ 1391(b)(2) and 1400, and Southern District of Florida Local Rule 3.1, because Defendants have committed acts of trademark and/or patent infringement in this Judicial District and within Miami-Dade County, and they have conducted substantial business in this Judicial District and County. Specifically, Defendants are reaching into Florida, including Miami-Dade County, to conduct business with residents by operating one or more commercial, interactive internet stores through which Florida residents in Miami-Dade County can purchase products that infringe Plaintiff's Trademarks and/or Patents. Each Defendant has targeted sales to Florida residents by operating online stores that offer shipping throughout the United States, including addresses in Miami-Dade County. Each Defendant has committed tortious acts in Florida, engaged in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Florida.

## THE PLAINTIFF

15.     Plaintiff, ND PRODUCTS, is a corporation organized under the laws of the State of Virginia with its principal place of business in McLean, Virginia.

**PLAINTIFF'S IP AND PRODUCTS**

16.     Plaintiff is the owner and/or lawful assignee of all rights, titles, and interest in and to various trademarks for its products, including Plaintiff's Trademarks, as listed in the table below:

| U.S. TM Reg. No. | Trademark | Registration Date |
|---|---|---|
| 4,455,913 | Smart Swab | December 24, 2013 |
| 7,151,155 | Ear-O-Care | August 29, 2023 |

*See* Ex. 1.

17.     Plaintiff is also the owner and/or lawful assignee of all rights, titles, and interest in and to Plaintiff's Patents, as listed in the table below:

| U.S. Patent Number | Claim | Issue Date |
|---|---|---|
| US D1,039,148 S |  | August 13, 2024 |
| US D965,784 S |  | October 4, 2022 |

| | | |
|---|---|---|
| US D866,763 S |  | November 12, 2019 |

*See* Ex. 2.

18.     Plaintiff develops, manufactures, and markets, among other products, cosmetic and ear cleaning tools as well as accessories that incorporate Plaintiff's Trademarks and/or embodies Plaintiff's Patents (the "Plaintiff's Products").   Plaintiff is the exclusive distributor and official source of Plaintiff's Products in the United States.   Plaintiff's Products span a wide range of tools, such as the patented designs for various ear cleaning apparatuses.   These products have earned significant recognition in the industry, including the Inpex Innovation Award.   The products have also been featured in major publications such as *Medtech Outlook*.

19.     Plaintiff's Products are also known for their distinctive and innovative designs. These designs are broadly recognized by consumers as being sourced from Plaintiff.   Products fashioned after these designs are associated with the quality and innovation that the public has come to expect from Plaintiff's Products.



*Exemplary Images of Plaintiff's Products Using Patented Technology and Trademarks*

7

20.     Plaintiff has expended substantial time, money, and other resources in advertising and otherwise promoting Plaintiff's Products, which bear, embody, and/or display at least one of Plaintiff's Trademarks and/or Patents.  Plaintiff's promotional efforts for Plaintiff's Products include, by way of example but not limitation, advertising campaigns through social media, Google Ads, Amazon Ads, targeted e-mails, and other online advertisements.  As a result, products bearing, embodying, and/or displaying any of the Plaintiff's Trademarks and/or Patents are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff.

## DEFENDANTS

21.     Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China, or other foreign jurisdictions.  Defendants conduct business throughout the United States, including within Florida and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores.  Each Defendant targets the United States, including Florida, and has offered to sell and, on information and belief, has sold and continues to sell the infringing Plaintiff's Products to consumers within the United States, including Florida and in this Judicial District and County.

## TEMPORARY REDACTION OF DEFENDANTS' IDENTITIES

22.     Pursuant to Southern District of Florida Local Rule 5.4(b)(1), Plaintiff is attaching a redacted version of the Schedule A contemporaneously with this Complaint.  This redacted Schedule A, which identifies Defendants by DOE number and platform, prevents premature disclosure of Defendants' full identities and avoids alerting counterfeiters who may monitor

federal court dockets and destroy evidence or transfer assets before the Court has the opportunity to act on Plaintiff's anticipated request for *ex parte* relief.

23.     Temporary redaction and sealing of the unredacted Schedule A is consistent with the procedures previously approved in this Court.  *See, e.g.*, *Complaint* at 18, *Tottenham Hotspur Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A,"* No. 1:25-cv-20476 (S.D. Fla. Jan. 31, 2025) (showing a redacted Schedule A filed contemporaneously with the initial complaint); *Order Granting Motion to Seal*, *Tottenham Hotspur Ltd.*, No. 1:25-cv-20476 (S.D. Fla. Feb. 3, 2025), Dkt. No. 8 (granting motion to seal after Plaintiff filed a redacted Schedule A contemporaneously with the initial complaint); *see also A.T. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A,"* No. 25-cv-21168, 2025 WL 2506612, at *1–2 (S.D. Fla. Mar. 18, 2025) (authorizing a complaint with initially restricted information to prevent premature notice to counterfeiters preserve the effectiveness of injunctive relief).

24.     Once the Court's filing system permits the Plaintiff to do so after the Clerk's Notice of Judge Assignment is entered in this case, Plaintiff will promptly file a motion to file under seal the unredacted version of the Schedule A, which identifies the full names and online marketplace store URLs of the Defendants.  *See A.T.*, 2025 WL 2506612, at *2 (noting temporary restriction within a complaint was justified where the plaintiff "assure[d] the Court that it will proceed under [a non-limited complaint] once Defendants are served and their accounts restrained").

## DEFENDANTS' UNLAWFUL CONDUCT

25.     The success of the Plaintiff's Products has resulted in a significant number of products that infringe Plaintiff's IP.

26.     Plaintiff has identified numerous Defendant Internet Stores linked to fully interactive websites and marketplace listings on platforms such as Amazon, DHgate, eBay, Shein,

and Walmart. These Defendant Internet Stores offer for sale, sell, and/or import Counterfeit Products to consumers in this Judicial District and throughout the United States.

27.     Defendants have persisted in creating such online marketplaces and internet stores, like the Defendant Internet Stores. In fact, according to an intellectual property right seizure statistics report issued by U.S. Customs & Border Protection, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2024 was $5.4 billion—an increase of 415% over the past five years.[2] Websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue each year.[3]

28.     Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling the genuine versions of Plaintiff's Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards or PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit websites from authorized websites.

29.     Plaintiff has not licensed or authorized Defendants to use the Plaintiff's Trademarks or Patents, and none of the Defendants are authorized retailers of genuine versions of Plaintiff's Products.

30.     Defendants also deceive unknowing consumers by using Plaintiff's IP without

---

[2] U.S. Customs & Border Prot., *Intellectual Property Rights Seizure Statistics: Fiscal Year 2024* (Pub. No. 3964-0125, 2025), https://www.cbp.gov/sites/default/files/2025-01/IntellectualPropertyRightsSeizureStatisticsFiscalYear2024%20FINAL.pdf (last visited March 13, 2026).
[3] Nat'l Ass'n of Mfrs., *Countering Counterfeits: The Real Threat of Fake Products* (July 2020), https://www.nam.org/wp-content/uploads/2020/07/CounteringCounterfeits.vF_.pdf (last visited March 13, 2026).

authorization within the product descriptions, content, text, and/or meta tags of their websites to attract various search engines crawling the internet looking for websites relevant to consumer searches for Plaintiff's Products.  Additionally, upon information and belief, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Plaintiff's Products.   Further, Defendants utilize similar illegitimate SEO tactics to propel new Internet storefront listings to the top of search results after others are shut down.  As such, Plaintiff also seeks to disable the Defendant Internet Stores owned and/or operated by Defendants that are the means by which the Defendants could continue to sell Counterfeit Products into this Judicial District and Division.

31.     Defendants have targeted sales to Florida residents by setting up and operating e-commerce stores that target United States consumers using one or more seller aliases, offer shipping to the United States, including Florida, accept payment in U.S. dollars, and sell Counterfeit Products to residents of Florida.

32.     On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores.  For example, it is common practice for counterfeiters to register their Defendant Internet Stores with incomplete information, randomly typed letters, or omitted cities or states, as many Defendants here have done.

33.     Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to this Complaint, as well as other unknown fictitious names and addresses.  Such registration patterns are common tactics used by Defendants to conceal their identities, the full scope and interworking of their massive e-commerce

operations, and to avoid being shut down.

34.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores.  For example, many of the Defendant Internet Stores have virtually identical layouts, even though different aliases were used to register the Defendant Internet Stores.

35.     The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, user-defined variables, domain redirection, lack of contact information, identically or similarly priced items, similar hosting services, similar name servers, and the use of the same text and images.

36.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts.  For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit.[4]

37.     Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received.  Rogue servers are notorious for ignoring take down demands sent by brand owners.[5]

---

[4] *See* U.S. Immigration and Customs Enforcement, *Buyers Beware! ICE HIS and CBP in Boston warn consumers about counterfeit goods during holiday shopping season* (December 2019), https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are "very adept at setting up online stores to lure the public into thinking they are purchasing legitimate goods on legitimate websites") (last visited March 13, 2026).
[5] While discussed in the context of false pharma supply chains, the use of rogue internet servers and sellers is a well-known tactic that has even been covered in congressional committee hearings. *See* COMM. ON ENERGY & COM., 113TH CONG., COUNTERFEIT DRUGS: FIGHTING

38.    Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts as well as e-commerce accounts, such as PayPal and other third-party payment processing accounts, behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts.

39.    Defendants maintain offshore bank accounts and regularly move funds from their Amazon, eBay, PayPal, and other third-party payment processing accounts to offshore bank accounts outside the jurisdiction of this Court.  Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

40.    Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used, and continue to use, Plaintiff's IP in connection with the advertisement, distribution, offering for sale, and/or sale of Counterfeit Products into the United States and Florida over the internet.

41.    Each Defendant Internet Store offers shipping to the United States, including Florida (in this Judicial District) and each Defendant has offered to sell Counterfeit Products into the United States, including Florida (in this Judicial District), thereby causing, and likely to continue causing, confusion, mistake, and deception by and among consumers, and resulting in irreparable harm to Plaintiff.

42.    Prior to and contemporaneous with their infringing actions alleged herein, Defendants had knowledge of (i) Plaintiff's ownership of the ND PRODUCTS IP, (ii) the fame and incalculable goodwill associated therewith, and (iii) the popularity and success of the

---

ILLEGAL        SUPPLY        CHAINS        (COMM.        PRINT.        2014), https://www.govinfo.gov/content/pkg/CHRG-113hhrg88828/html/CHRG-113hhrg88828.htm (last visited March 13, 2026).

Plaintiff's Products.  Defendants, in bad faith, proceeded to manufacture, market, develop, offer for sale, and/or sell the Counterfeit Products.

43.     Defendants have been engaging in infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff and Plaintiff's Products.

**<u>FIRST CAUSE OF ACTION</u>**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

44.     Plaintiff hereby re-alleges and incorporates by reference herein its allegations contained in paragraphs 1–43 of this Complaint.

45.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered Plaintiff's Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of Counterfeit Products. Plaintiff's Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from Plaintiff's Products provided under Plaintiff's Trademarks.

46.     Defendants have sold, offered to sell, marketed, distributed, and/or advertised, and are still selling, offering to sell, marketing, distributing, and/or advertising products in connection with Plaintiff's Trademarks without Plaintiff's permission.

47.     Plaintiff is the registered owner of Plaintiff's Trademarks.  The registrations for Plaintiff's Trademarks (Ex. 1) are in full force and effect.  Upon information and belief, Defendants have knowledge of Plaintiff's rights in Plaintiff's Trademarks and are willfully counterfeiting Plaintiff's Trademarks.   Defendants' willful, intentional, and unauthorized use of Plaintiff's Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public, as demonstrated by the exemplary image that follows:

14



*Exemplary Counterfeit Product Sold by Defendant Infringing on Plaintiff's Registered Trademark[6]*

48.     Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

49.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and/or sale of Counterfeit Products.

50.     Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to their reputation and the goodwill of their well-known ND PRODUCTS Trademarks.

## SECOND CAUSE OF ACTION
## DESIGN PATENT INFRINGEMENT (35 U.S.C. § 271)

51.     Plaintiff hereby re-alleges and incorporates by reference herein its allegations

---

[6] *See* Ex. 1.

contained in paragraphs 1–43 of this Complaint.

52.     Defendants are manufacturing, distributing, offering for sale, selling, and/or importing into the United States, Counterfeit Products that infringe directly and/or indirectly Plaintiff's Patents.

53.     For instance, below is a comparison of figures from Plaintiff's Patents and images of one of Defendant's Counterfeit Products sold on a Defendant Internet Store:



*Figures from the ND PRODUCTS Patents*



*Exemplary Counterfeit Product Sold by Defendant Infringing on Plaintiff's Granted Patent*[7]

---

[7] *See* Ex. 2.

54.     Defendants' activities constitute willful patent infringement under 35 U.S.C. § 271.

55.     Defendants have infringed Plaintiff's Patents through the aforesaid acts and will continue to do so unless enjoined by this Court.  Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm, including the loss of its lawful patent rights to exclude others from manufacturing, distributing, selling, offering for sale, and/or importing the patented invention, as well as the loss of sales stemming from the infringing acts.

56.     Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.  Unless a preliminary and permanent injunction is issued enjoining Defendants and all others acting in concert therewith from further infringing the Design Patents, Plaintiff will continue to suffer irreparable harm.

57.     Plaintiff is also entitled to recover damages adequate to compensate for the infringement pursuant to 35 U.S.C. § 289, amounting to Defendants' infringing profits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1.     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from

a.     using Plaintiff's Products or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine version Plaintiff's Product or is not authorized by Plaintiff to be sold in connection with Plaintiff's Trademarks;

b.     passing off, inducing, or enabling others to sell or pass off any product as

the genuine Plaintiff's Products or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's Trademarks;

c.    committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d.    further infringing the ND PRODUCTS Trademarks and ND PRODUCTS Patents and damaging Plaintiff's goodwill;

e.    shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof;

f.    using, linking to, transferring, selling, exercising control over, or otherwise owning the online marketplace accounts, the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Products; and

g.    operating and/or hosting websites at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing Plaintiff's Trademarks or any reproduction, counterfeit copy, or colorable imitation thereof that is not the genuine Plaintiff's Product or not authorized by Plaintiff to be sold in connection with Plaintiff's Trademarks.

2.    That Defendants, their affiliates, officers, agents, servants, employees, attorneys,

confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from

      a.      making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use any products not authorized by Plaintiff that embody, copy, or constitute a colorable imitation of the designs claimed in Plaintiff's Patents;

      b.      passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff's Product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's Patents;

      c.      further infringing Plaintiff's Patents and damaging Plaintiff's goodwill;

      d.      aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon Plaintiff's Patents;

      e.      shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which infringe Plaintiff's Patents; and

      f.      operating and/or hosting online marketplace accounts at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product infringing Plaintiff's Patents.

    3.      Entry of an Order that Amazon, DHgate, eBay, Shein, and Walmart, and any other online marketplace account provider

      a.      disable and cease providing services for any accounts through which Defendants engage in the sale of Counterfeit Products, including any accounts associated with

the Defendants listed on Schedule A;

       b.     disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Counterfeit Products; and

       c.     take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

4.     That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5.     That Plaintiff be awarded such damages as it shall prove at trial against Defendants that are adequate to compensate Plaintiff for Defendants' infringement of the ND PRODUCTS Patents, but in no event less than a reasonable royalty for the use made of the invention by the Defendants, together with interest and costs, pursuant to 35 U.S.C. § 284;

6.     That the amount of damages awarded to Plaintiff to compensate Plaintiff for infringement of Plaintiff's Patents be increased by three times the amount thereof, as provided by 35 U.S.C. § 284;

7.     In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of the ND PRODUCTS Trademarks; and that Plaintiff be awarded all infringing profits realized by Defendants from Defendants' infringement of the ND PRODUCTS Patents, pursuant to 35 U.S.C. § 289;

8.     That Plaintiff be awarded its reasonable attorneys' fees and costs; and

9.     Award any and all other relief that this Court deems just and proper.

Dated: March 13, 2026                    Respectfully submitted,

                                         **BOIES SCHILLER FLEXNER LLP**

                              By:   */s/ Leigh Salomon*
                                    Leigh Salomon (FL Bar No. 1054106)
                                    100 SE 2nd Street, Suite 2800
                                    Miami, FL 33131
                                    Tel: (305) 357-8450
                                    lsalomon@bsfllp.com

                                    *Attorney for Plaintiff, ND PRODUCTS INC.*

**REDACTED SCHEDULE A**

     This Schedule A is the subject of Plaintiff's forthcoming Motion to File Under Seal.  As such, this page has been redacted in accordance with Local Rule 5.4(b)(1).

| DOE | Defendant Seller | Defendant Online Marketplace |
|:---:|---|---|
| 1 | ████ | https://www.amazon.com/sp?seller=████ |
| 2 | ████████████ | https://www.amazon.com/sp?seller=████ |
| 3 | ████ | https://www.amazon.com/sp?seller=████ |
| 4 | █████████ | https://www.amazon.com/sp?seller=████ |
| 5 | ████ | https://www.amazon.com/sp?seller=████ |
| 6 | ██████████ | https://www.amazon.com/sp?seller=████ |
| 7 | ██████ | https://www.amazon.com/sp?seller=████ |
| 8 | ████ | https://www.amazon.com/sp?seller=████ |
| 9 | █████████ | https://www.amazon.com/sp?seller=████ |
| 10 | ██████ | https://www.amazon.com/sp?seller=████ |
| 11 | ████ | https://www.amazon.com/sp?seller=████ |
| 12 | ███████ | https://www.amazon.com/sp?seller=████ |
| 13 | ███ | https://www.amazon.com/sp?seller=████ |
| 14 | █████████ | https://www.amazon.com/sp?seller=████ |
| 15 | █████ | https://www.dhgate.com/store/about-us/████.html |
| 16 | █████ | https://www.dhgate.com/store/about-us/████.html |
| 17 | █████ | https://www.ebay.com/usr/████ |

| 18 | ██████████ | https://www.ebay.com/str/████████ |
| 19 | ████ | https://us.shein.com/store/home?store_code=██ |
| 20 | ██████ | https://us.shein.com/store/home?store_code=██ |
| 21 | ████ | https://us.shein.com/store/home?store_code=██ |
| 22 | ███████ | https://us.shein.com/store/home?store_code=██ |
| 23 | █████ | https://us.shein.com/store/home?store_code=██ |
| 24 | ██████ | https://us.shein.com/store/home?store_code=██ |
| 25 | █████ | https://us.shein.com/store/home?store_code=██ |
| 26 | ████████ | https://us.shein.com/store/home?store_code=██ |
| 27 | █████████ | https://us.shein.com/store/home?store_code=██ |
| 28 | ████ | https://us.shein.com/store/home?store_code=██ |
| 29 | ███ | https://us.shein.com/store/home?store_code=██ |
| 30 | ███████████ | https://us.shein.com/store/home?store_code=██ |
| 31 | █████ | https://us.shein.com/store/home?store_code=██ |
| 32 | █████ | https://us.shein.com/store/home?store_code=██ |
| 33 | █████ | https://www.walmart.com/reviews/seller/██ |
| 34 | ███████ | https://www.walmart.com/reviews/seller/██ |
| 35 | █████ | https://www.walmart.com/reviews/seller/██ |
| 36 | ███ | https://www.walmart.com/reviews/seller/██ |
| 37 | ██████ | https://www.walmart.com/reviews/seller/██ |

| 38 | ███████ | https://www.walmart.com/reviews/seller/███ |
| 39 | █████ | https://www.walmart.com/reviews/seller/███ |
| 40 | █████████ | https://www.walmart.com/reviews/seller/███ |
| 41 | █████████ | https://www.walmart.com/reviews/seller/███ |
| 42 | ███████ | https://www.walmart.com/reviews/seller/███ |
| 43 | ██████ | https://www.walmart.com/reviews/seller/███ |
| 44 | █████ | https://www.walmart.com/reviews/seller/███ |
| 45 | ███████ | https://www.walmart.com/reviews/seller/███ |